**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**MICHAEL G. TUCKER, and**
**his wife, SUZANNE TUCKER,**

**Plaintiffs,**

**v.**

**Civil Action No.** 2:24-cv-665
**Judge** _____________

**WAL-MART STORES, INC.; a corporation; WAL-MART STORES EAST, LP, a limited partnership; WAL-MART STORES EAST, INC., a corporation; WAL-MART ASSOCIATES, INC., a corporation; WAL-MART REAL ESTATE BUSINESS TRUST, a trust; and WAL-MART REALTY COMPANY, a corporation,**

**Defendants.**

---

**COMPLAINT**

---

COME NOW Plaintiffs, Michael G. Tucker, and his wife, Suzanne Tucker, by and through counsel, and file this Complaint against Defendants. In support thereof, they allege the following:

**<u>Parties</u>**

1. Plaintiffs are residents of Nicholas County, West Virginia.
2. Suzanne Tucker is the wife of Plaintiff Michael G. Tucker and asserts a loss of consortium claim herein.
3. Defendant, Wal-Mart Stores, Inc., is a Delaware corporation with its principal place of business in Bentonville, Arkansas, registered to do business in West Virginia.

4. Defendant, Wal-Mart Stores East, LP, is a Delaware limited partnership, registered to do business in West Virginia, with its principal place of business in Bentonville, Arkansas. Each of the partnership's partners are citizens of the state of Arkansas.
5. Defendant, Wal-Mart Stores East, Inc., is a Delaware corporation registered to do business in the state of West Virginia, with its principal place of business in Bentonville, Arkansas.
6. Defendant, Wal-Mart Associates, Inc., is a Delaware corporation registered to do business in the state of West Virginia, with its principal place of business in Bentonville, Arkansas.
7. Defendant, Wal-Mart Real Estate Business Trust, is a Delaware business trust registered to do business in the state of West Virginia, with its principal place of business in Bentonville, Arkansas.
8. Defendant, Wal-Mart Realty Company, is a Delaware corporation registered to do business in the state of West Virginia, with its principal place of business in Bentonville, Arkansas.

**Jurisdiction and Venue**

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and the Plaintiffs and Defendants are citizens of different states.
10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in this judicial district.

**General Allegations**

11. On December 9, 2022, Defendants Wal-Mart Stores, Inc.; Wal-Mart Stores, East, Limited Partnership; Wal-Mart Stores East, Inc.; Wal-Mart Associates, Inc.; Wal-Mart Real Estate

Business Trust; & Wal-Mart Realty Company (hereinafter referred to collectively as "Wal-Mart") were owners, occupiers, operators, lessor, and/or lessees of the Wal-Mart Superstore located at 200 Wal St, Summersville, West Virginia (hereinafter "Summersville Wal-Mart")

12. Wal-Mart held the Summersville Wal-Mart and its premises open to the public and to public transportation services for business purposes.

13. Mountain Transportation Services ("MTA"), a regional transit authority, provides public transportation services in Nicholas County, including service to the Summersville Wal-Mart.

14. On December 9, 2022, Plaintiff, Michael G. Tucker (hereinafter "Mr. Tucker" or "Plaintiff"), was an employee of MTA, operating a Passenger Shuttle Bus ("Bus") for the purpose of transporting passengers to and from the Summersville Wal-Mart. MTA busses regularly operated on the premises of the Summersville Wal-Mart with Wal-Mart's permission and under its control and direction.

15. MTA and its employee drivers, including Plaintiff, were directed by Wal-Mart to pick-up and deliver Summersville Wal-Mart passengers at a specific location ("Designated Location") directly in front of an entrance to the Superstore. This area was highly congested with Summersville Wal-Mart patrons and motor vehicular traffic associated with them.

16. There were areas far more feasible and suitable from a safety and convenience perspective for a drop off/pick-up location, all of which were in close proximity to the area Defendants forced MTA to utilize.

17. On December 9, 2022, Mr. Tucker, following Wal-Mart's directions and with its express permission and knowledge, stopped his Bus in the Designated Location for the purpose of offloading passengers to shop at the Summersville Wal-Mart and boarding those Summersville Wal-Mart patrons that completed their shopping. The Designated Location was congested with pedestrian and motor vehicle traffic.

18. After parking in the Designated Location, as directed by Walmart, Mr. Tucker disembarked from the Bus and traversed around the front of the Bus to assist a wheelchair-bound passenger to get on the Bus from the passenger side. After assisting the disabled passenger, and securing the wheelchair, Mr. Tucker walked around the front of the Bus to enter the driver's front door.

19. While Mr. Tucker was in the process of entering the Bus, he was struck with devastating force by a vehicle operated by a Summersville Wal-Mart patron, who accelerated her vehicle through the crosswalk area, which included the Designated Location.

20. The highly congested nature of the Designated area and the close proximity of the Bus, prevented Mr. Tucker from avoiding the impact.

21. As a direct result of the impact, Mr. Tucker careened through the air for approximately twenty (20) feet with his head coming to rest against the rear wheels of the Bus, causing him to suffer severe and permanent injuries.

22. Mr. Tucker was without fault.

23. Due to the severity of the injuries sustained in the incident, Mr. Tucker was immediately Life Flighted to CAMC General Hospital in Charleston, West Virginia, for emergency treatment.

24. Each and every MTA Bus parked in the Designated Location in the crosswalk area to load and unload passenger, as specifically directed by Walmart.

25. The Designated Location in the crosswalk placed pedestrians, Bus passengers, and Bus operators, including Plaintiff, in close proximity to oncoming traffic.

26. Placing Mr. Tucker in close proximity to oncoming traffic, directly and proximately, caused his injuries.

27. It was reasonably foreseeable that requiring MTA bus drivers, like Mr. Tucker, to park in the Designated Location would result the bus driver suffering injuries.

28. Wal-Mart's negligent failure, among other things, to designate a less congested and far safer location for pedestrian pick-up and drop-off was a substantial factor in causing this incident.

**Count 1 – Negligence**

29. Plaintiff incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

30. Defendants, as owners, operators, lessors, and/or lessees of the Summersville Wal-Mart, owed a duty to Mr. Tucker to use reasonable care to keep the Wal-Mart premises reasonably free of and to not create dangerous conditions.

31. Wal-Mart had actual and constructive notice that the dangerous conditions it created existed prior to the incident.

32. Wal-Mart failed to take reasonable precautions necessary to prevent injury to customers, invitees and others lawfully on the premises.

33. Wal-Mart owed a duty of reasonable care to protect Mr. Tucker, invitees, licensees and others reasonably foreseeably on the premises from physical harm caused by dangerous conditions, which they created, on its premises.

34. Wal-Mart's duty of care included a duty to design, operate, and maintain a parking lot that was safe for customers and invitees, including the specific duty to select an MTA passenger loading and unloading safely away from the motor vehicular traffic in and near the crosswalks servicing the Superstore.

35. In requiring the use of the highly congested Designated Location in close proximity to a high volume of motor vehicular traffic, it was reasonably foreseeable that a bus operator, such as Mr. Tucker, could be injured by Wal-Mart-related motor vehicular traffic.

36. Wal-Mart breached its duty of care by, among other things, failing to:

a. designate a passenger loading and unloading area for MTA Buses and similar motor vehicles in a safer and less congested area with sufficient room to pull to the curb to avoid dangerously close motor vehicular traffic;

b. design, install, and implement a traffic management system for its parking lot that permits buses, such as the MTA Bus, to unload and load Walmart customers in a safe area that does not expose customers and invitees to hazardous congestion and traffic conditions;

c. Implement appropriate policies and preventative measures to ensure that buses would not be allowed to load and unload passengers in high-traffic areas of the Wal-Mart parking lot;

d. Install adequate traffic-safety signage and devices throughout the Wal-Mart parking lot to establish safe driving paths for customers and prevent collisions; and

e. Establish a traffic flow system to ensure a manageable and safe traffic flow.

37. Wal-Mart further breached its duty of care by instructing MTA and its employee drivers to load and unload Summersville Wal-Mart patrons in the Designated Location which was highly congested thereby creating a specific unsafe condition on its property.

38. Wal-Mart is vicariously liable, for the acts of its employees and/or agents under the doctrine of *respondeat superior*.

39. Wal-Mart further breached the duties set forth in the preceding paragraphs by failing to exercise reasonable care in hiring, instructing, training, and supervising employees and agents responsible for the design, operation and maintenance of its Summersville Wal-Mart parking lot.

40. It was reasonably foreseeable that the negligent conduct and actions of Wal-Mart could cause harm to Mr. Tucker and to persons lawfully on the premises.

41. Plaintiffs suffered injury as a direct and proximate result of the negligence of Wal-Mart.

42. As a direct and proximate result of the negligence of Wal-Mart, Mr. Tucker suffered severe personal injuries and damages, including, but not limited to, significant pain and suffering, medical expenses, and loss of income.

**Count 2 – Premises Liability**

43. Plaintiffs hereby incorporate by reference the allegations contained above, as if fully set forth herein.

44. Wal-Mart owed a duty to exercise reasonable care to Mr. Tucker, and other invitees and licensees to prevent physical harm caused by dangerous conditions and other unreasonable risks of harm at its Summersville Wal-Mart location.

45. Wal-Mart owed a duty to Mr. Tucker, and other invitees and licensees, to take reasonable steps to eliminate, adequately protect against, or not create unreasonable risks of harm and to provide a reasonably safe premises.

46. Wal-Mart breached its duty to provide a reasonably safe premises by, among other things, failing to:

    a. designate a passenger loading and unloading area for MTA Buses and similar motor vehicles in a safer and less congested area with sufficient room to pull to the curb to avoid dangerously close motor vehicular traffic;

    b. design, install, and implement a traffic management system for its parking lot that permits buses, such as the MTA Bus, to unload and load Walmart customers in a safe area that does not expose customers and invitees to hazardous congestion and traffic conditions;

    c. Implement appropriate policies and preventative measures to ensure that buses would not be allowed to load and unload passengers in high-traffic areas of the Wal-Mart parking lot;

    d. Install adequate traffic-safety signage and devices throughout the Wal-Mart parking lot to establish safe driving paths for customers and prevent collisions; and

    e. Establish a traffic flow system to ensure a manageable and safe traffic flow.

47. Wal-Mart further breached its duty of care by instructing MTA and its employee drivers to load and unload Summersville Wal-Mart patrons in the Designated Location which was highly congested thereby creating a specific unsafe condition on its property.

48. As a result of Wal-Mart's breach in duties, and as a direct and proximate result of its negligent acts and omissions, the Plaintiff sustained severe and catastrophic injuries.

49. Mr. Tucker's injuries were the result of errors and omissions by its employees, agents, and authorized representatives, acting within the course and scope of their employment or agency.

50. Defendant Wal-Mart is vicariously liable, for the acts of its employees and or agents under the doctrine of *respondeat superior.*

51. It was reasonably foreseeable that the negligent conduct and actions of Wal-Mart in failing to provide reasonably safe premises could cause harm to Mr. Tucker and to persons lawfully on the premises.

52. As a direct and proximate result of the negligence of Wal-Mart in failing to create a reasonably safe premise, Mr. Tucker suffered severe personal injuries and damages, including, but not limited to, significant pain and suffering, medical expenses, and loss of income.

**Count 3 – Loss of Consortium of Suzanne Tucker**

53. Plaintiffs hereby incorporate by reference the allegations contained above, as if fully set forth herein.

54. Plaintiff Suzanne Tucker is the wife of Plaintiff Michael Tucker.

55. As a direct and proximate result of the aforementioned negligence, Mrs. Tucker has suffered substantial mental distress and anguish.

56. Mrs. Tucker is also entitled to recover damages for the loss of affection, care, society, companionship, and consortium of her husband.

**Prayer for Relief**

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages to be determined by a jury in accordance with the laws of the State of West Virginia; including but not limited to: severe and permanent injuries; medical, hospital, and other healthcare costs (past, present, and future); physical pain and suffering (past, present, and future); emotional distress and mental anguish (past, present, and future); loss of ability to enjoy life (past, present, and

future); lost wages (past, present, and future), earning capacity and other economic losses (past, present and future); and any and all other damages and relief allowable by law that may be deemed justified by the Court.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE BY JURY.**

**Dated: November 19, 2024**

**MICHAEL G. TUCKER, and**
**his wife, SUZANNE TUCKER,**

**By Counsel.**

***/s/ Raj A. Shah 11/19/2024***

R. Scott Long, Esquire (#2238)
Raj A. Shah, Esquire (#11269)
David F. Nelson, Esquire (#5754)
A. Luca Paternostro, Esquire (#14666)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (facsimile)
scott@handl.com
rshah@handl.com
dnelson@handl.com
lpaternostro@handl.com